IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIKA L. MAYALL,<br><br>    *Plaintiff,*<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 17-4146 |

**PAPPERT, J.**                               January 22, 2019

## **MEMORANDUM**

  Erika Mayall seeks judicial review of the Commissioner of Social Security's denial of her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 301, *et seq*. The Court referred the case to Chief Magistrate Judge Linda K. Caracappa for a Report and Recommendation. (ECF No. 18.) Upon careful consideration of Mayall's Brief and Statement of Issues in Support of Request for Review (ECF No. 16), the Commissioner's Response (ECF No. 17), Mayall's Reply (ECF No. 20), Judge Caracappa's R. & R. (ECF No. 23), Mayall's Objections (ECF No. 26), the Commissioner's Response (ECF No. 28) and the Administrative Record[1] (ECF No. 11), the Court overrules Mayall's objections and adopts the R. & R. denying Mayall's request for review and affirming the Commissioner's decision.

---

[1]   The record, consisting of 800 numbered pages, was uploaded to ECF. *See* (ECF Nos. 11-1–11-14). The Court will cite to the record page numbers rather than ECF document numbers.

I

Mayall applied for SSI on May 16, 2014, alleging disability beginning December 21, 2012.[2] (Administrative Record ("R.") 218, 388–93.) She was thirty-four years old at the time of her application and lived with her father and her three children. (R. 218, 230, 258.) Mayall is not currently married. (*Id.* at 258.) She attended high school with an IEP (*id.* at 243), then worked for an insurance company and two mortgage companies as a file clerk, an administrative clerk and a data entry clerk until approximately December of 2004. (*Id.* at 244–45, 274, 412). She co-owns a car and drives approximately ten miles per day, often to visit her partner, Shirley. (*Id.* at 242–43, 260, 388–89.) According to Mayall, spending time with Shirley "keeps [her] stable." (*Id.* at 260.)

Mayall seeks SSI due to a number of impairments, including residuals of an open reduction internal fixation of the left shoulder, bipolar disorder, ADHD, borderline personality disorder, panic disorder and asthma. (*Id.* at 220.) Mayall has been hospitalized several times, including in 1998 for cutting and 2008 after lighting a truck on fire. (*Id.* at 224.) In 2011, she was "302'd" (involuntarily committed) twice, first as the result of a drug overdose and then after jumping out of a second-story window. (*Id.*.)

---

[2] Mayall first applied for SSI and disability insurance benefits on June 3, 2011, alleging disability beginning February 1, 2009. (R. 292.) *See also Mayall v. Colvin*, 2015 WL 5000726 at *1 (E.D. Pa. Aug. 11, 2015). The Social Security Administration denied her claims, and on December 12, 2012—after an October 16, 2012 hearing at which Mayall, her father and an impartial vocational expert testified—the ALJ held that Mayall is not disabled under § 1614(a)(3)(A) of the Social Security Act. (R. 306); *Mayall*, 2015 WL 5000726 at *1. The Appeals Council denied Mayall's request for review. (R. 312.) Mayall sought judicial review of the ALJ's December 12, 2012 decision. *Mayall*, 2015 WL 5000726 at *1. Magistrate Judge Carol Sandra Moore Wells recommended that the Court grant Mayall's request for review and remand the case. *Id.* After considering Magistrate Judge Wells's R. & R., the Commissioner's objections and the record, Judge Ronald Buckwalter sustained the Commissioner's objections and denied Mayall's request for judicial review. *Id.* at *9.

Sometime in 2015, Mayall found a warehouse job. (*Id.* at 248.) She quit after one month because she was scared "people can hear [her] when [she's] thinking, what [she's] saying." (*Id.*) She was admitted to Brooke Glen Medical Hospital on December 16, 2015 due to "psychotic behavior" and remained there for treatment until December 31. (*Id.* at 461.) While in the hospital, she "consistently complained of hearing voices." (*Id.*) Several months later, on June 5, 2016, she was again involuntarily committed to Lower Bucks Hospital for disorganized and dangerous behavior; she remained there until June 13. (*Id.* at 42.)

Mayall's claim for SSI was initially denied by the Social Security Administration on September 19, 2014. (*Id.* at 218, 339.) On October 7, 2014, she filed a request for a hearing before an Administrative Law Judge, which was held on March 23, 2016. (*Id.* at 218, 236, 343.) Mayall, represented by counsel, Mayall's son and an impartial vocational expert testified at the hearing. (*Id.* at 218, 236.) On April 14, 2016, after considering the evidence and applying the five-step sequential evaluation process,[3] the

---

[3] The Commissioner has established a five-step process to determine whether claimants are disabled. 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (citation omitted); 20 C.F.R. § 416.920(b). If not, the ALJ proceeds to step two where he or she must determine whether the claimant has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." *Ramirez*, 372 F.3d at 550 (citation omitted); 20 C.F.R. § 416.920(c). If the claimant successfully demonstrates a "severe impairment," the ALJ proceeds to step three to assess whether the impairment meets or medically equals one of the listed impairments; if so, the claimant qualifies for disability. *Ramirez*, 372 F.3d at 550–51 (citation omitted); 20 C.F.R. §416.920(d). If, however, the impairment does not meet or medically equal a listed impairment, the inquiry proceeds to step four where the ALJ determines whether the claimant has the "residual functional capacity" (RFC) to perform any prior relevant work. *Ramirez*, 372 F.3d at 551; 20 C.F.R. §416.920(e). If the claimant can perform any prior relevant work, he or she will not be found disabled. *Ramirez*, 372 F.3d at 551. If not, the fifth step requires the ALJ to consider "vocational factors" (age, education and past work experience) to determine whether the claimant is capable of performing other jobs existing in the national economy. *Id.* (citing 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)).

ALJ held that Mayall is not disabled under § 1614(a)(3)(A) of the Social Security Act and denied her claim. (*Id.* at 215–32.)

At step one, the ALJ determined that Mayall had not engaged in substantial gainful activity since May 16, 2014, the date of her application. (*Id.* at 220.) At step two, the ALJ found she has several severe physical and mental impairments. (*Id.* at 220.) At step three, the ALJ determined that the impairments, either alone or in combination, do not meet the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*) At step four, the ALJ stated that Mayall had the RFC to:

> [P]erform light work as defined in 20 C.F.R. § 416.967(b) except [she] is limited to simple, routine tasks requiring no more than reasoning level 2, involving occasional contact with the public, coworkers, and supervisors, no working on assembly lines or in teams with little change in the work setting or work processes, involving occasional exposure to fumes, dust, gases, odors, and changes in temperature and humidity not requiring reaching above shoulder level with the left non-dominant arm.

(*Id.* at 221–23.) Given the RFC assessment, the ALJ concluded that Mayall could not perform her past relevant work. (*Id.* at 230.) Considering Mayall's age, education, work experience, RFC and the vocational expert's testimony, the ALJ determined that jobs exist in significant numbers in the U.S. economy that Mayall can still perform, including sorter, marker and dental floss packer. (*Id.* at 230–31.)

Mayall filed a request for review with the Appeals Council on June 10, 2016. (*Id.* at 387.) The Council denied the request on July 21, 2017, rendering the ALJ's decision final. (*Id.* at 1–4.) Mayall filed this action on September 19, 2017, seeking judicial review of the ALJ's decision. (Compl., ECF No. 3.) She argued that the ALJ erred by giving little weight to (1) the medical opinions of her treating psychiatrist and therapist and (2) her father's non-medical opinion. (Pl.'s Br. 5, 14.) On July 30, 2018, Judge Caracappa recommended that Mayall's request for review be denied. (R. &. R. 1.)

Mayall raises two objections to the R. & R. which the Court overrules for the reasons that follow.

II

Upon designation, a magistrate judge may conduct hearings and submit proposed findings of fact and recommendations to a judge of the court for disposition. 28 U.S.C. § 636(b)(1)(B); *Dries v. Berryhill*, 2017 WL 4922011 at *2 (M.D. Pa. Oct. 31, 2017). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When no objections are made to the R. & R., "the court should, as a matter of good practice, 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Latorre v. Wetzel*, 2016 WL 3014874 at *1 (E.D. Pa. May 26, 2016) (quoting Fed. R. Civ. P. 72(b) advisory committee's note); *see also Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every R. & R.). For the portions of the R. &. R to which neither party objected, no clear error appears on the face of the record and the Court accordingly accepts Judge Caracappa's report.

The Court reviews *de novo* those portions of the R. & R. to which Mayall objects. *See* 28 U.S.C. § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). The Court's role on review is to determine whether the ALJ's determinations were supported by substantial evidence. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted). "It is 'more than a mere scintilla but may be somewhat

less than a preponderance of the evidence.'" *Id*. (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).

In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). "The ALJ resolves conflicts in the evidence, determines the evidence's credibility, and assigns the appropriate weight to be given such evidence." *D'angelo v. Colvin*, 2016 WL 930690 at *2 (E.D. Pa. Mar. 11, 2016) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) and *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 2004)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The decision need only discuss the most relevant evidence concerning a claimant's disability, "but it must provide sufficient discussion to allow the reviewing Court to determine whether its rejection of potentially significant evidence was proper." *D'angelo*, 2016 WL 930690 at *1 (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008)).

III

A

Mayall objects to Judge Caracappa's conclusion that the ALJ did not err in giving little weight to the medical opinion of her treating psychiatrist, Jeffrey Woloshin,

6

M.D., at step four of the evaluation.[4]  The ALJ considered numerous medical opinions in determining Mayall's RFC, including those of Dr. Woloshin, Maria Tull, LPC, Stephen Thomas, D.O., Randi Mittleman, M.D., Kathleen Mullin, M.D., Henry Dubiel, D.O., George Layne, M.D., Elizabeth Hoffman, Ph.D. and Michael Mesaros, M.D.  (R. at 224–229.)  Mayall is correct that the ALJ gave little weight to Dr. Woloshin's medical source statement, completed shortly before Mayall's first ALJ hearing in October of 2012.  (*Id.* at 225.)  The ALJ gave much weight, however, to the mental status examinations Dr. Woloshin conducted on Mayall each month from January of 2012 to February of 2014.  (*Id.* at 224–26, 229–30.)  The ALJ explained that he gave little weight to Woloshin's medical source statement because it is "drastically inconsistent' with the mental status examinations he conducted both before and after the statement was issued.  (*Id.* at 225.)

The "law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."  *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011) (citing *Adorno v. Shalala*, 40 F.3d 43, 47–48 (3d Cir. 1994)) (finding that the ALJ's decision to not adopt the opinion of plaintiff's treating psychiatrist was supported by substantial evidence where the ALJ clearly explained why she gave greater weight to another opinion).  "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."  20

---

[4]  Mayall raised the same issue when she appealed the denial of her request for review of the ALJ's December 12, 2012 decision.  *See* Pl.'s Br. at 13–18, Mayall v. Colvin, No. 14-2721 (E.D. Pa. Jan. 16, 2015), ECF No. 13.  In that case, Magistrate Judge Wells concluded that the ALJ did not err in giving very little weight to Dr. Woloshin's October 2012 medical source statement.  R. & R. at 12–14, Mayall v. Colvin, No. 14-2721 (E.D. Pa. Jan. 16, 2015), ECF No. 17.  Judge Wells determined that the ALJ's dismissal of Woloshin's statements was supported by substantial evidence—namely the fact that Woloshin's statements were "inconsistent with his own treatment notes," Mayall's presentation at the hearing and examinations and other medical evidence in the record.  *Id.* at 13–14.  Mayall did not object to Judge Wells's conclusion.

7

C.F.R. § 416.927(c)(4). Accordingly, an opinion offered by the claimant's "treating source" is given controlling weight so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* at § 416.927(c)(2).

From January 2012 to November 2013, Dr. Woloshin's mental status examinations of Mayall reflect that she had normal thought content, thought process, speech, motor function, intellect, insight, judgment, impulse control, memory, concentration, attention and behavior. (*Id.* at 468–99.) In January of 2013, Woloshin's examination notes show that Mayall's motor function was slow and her insight was only partially present, but her mental status was otherwise normal. (*Id.* at 501.) The examinations reflected normal mental status again from late January of 2013 to November of 2013.[5] (*Id.* at 501–528.)

On the medical source statement Woloshin completed for Mayall in October of 2012, he marked that she had "poor memory," "loss of intellectual ability 15 IQ points or more," "difficulty thinking or concentrating" and that she would likely be absent from work more than three times per month due to her mental impairments. (*Id.* at 647, 649.) He noted that her impairments had lasted or could be expected to last at least twelve months. (*Id.* at 648.) When asked to rate her mental abilities and aptitude to perform unskilled work, he marked "poor to none" in all sixteen skill categories. (*Id.* at 649.) He also marked that she had "poor to [no]" ability to interact appropriately with the public, maintain socially appropriate behavior or adhere to basic standards of cleanliness. (*Id.* at 650.) At the end of the statement, Woloshin noted that Mayall

---

[5] Woloshin did not complete the mental status examination form in December of 2013. (R. at 531.)

could manage social security benefits in her own best interest despite her impairments. (*Id.*)

The ALJ's decision to give little weight to Woloshin's October 2, 2012 medical source statement is supported by substantial evidence. As the ALJ observed, the medical source statement is inconsistent with Woloshin's monthly examinations of Mayall—even the examination conducted on October 2, 2012, in which he found normal thought content, thought process, speech, motor function, intellect, insight, judgment, impulse control, memory, concentration, attention and behavior. (*Id.* at 491.) The ALJ considered Mayall's testimony that she drives roughly ten miles every day and drove thirty minutes to her hearing and that she takes medications for her mental impairments, which help "somewhat." (*Id.* at 242–43, 248–49.) The ALJ also considered mental status examination reports prepared by Dr. Mittleman, Mayall's treating psychiatrist from mid-2014 to early 2015, which reflect normal thought process, orientation and memory and fair insight and judgment. (*Id.* at 571, 576, 669–70, 672–73, 675–76, 678–79, 681–82.) Finally, the ALJ considered the opinion of Dr. Hoffman, a state agency consultant, who reviewed Mayall's records and concluded that while her mental impairments moderately restrict her activities of daily living and her ability to maintain social functioning, concentration, persistence or pace, carry out detailed instructions, interact appropriately with the public and respond to changes in the work setting, Mayall can still understand, remember and carry out simple instructions. (*Id.* at 228–29, 327–30.) Hoffman noted that despite Mayall's limitations, she is independent in personal care and "able to meet the basic demands of simple routine tasks on a sustained basis." (*Id.*)

B

Mayall also objects to Judge Caracappa's conclusion that the ALJ did not err in giving little weight to the non-medical opinion of her father, Russell Mayall, at step four of the evaluation.

The ALJ reviewed the third-party function report prepared by Mayall's father. (*Id.* at 229.) In the report, Mr. Mayall stated that his daughter "has a plate in her shoulder and cannot lift heavy things, [and] has depression." (*Id.* at 417.) "When she gets depressed, depending on extent of depression," he wrote, "her ability to do anything can be decrease [sic] a little or a lot." (*Id.* at 418.) He noted that when she is depressed, she sleeps frequently, must be reminded to take care of her personal needs, groom and take medicine, does not feel like eating and needs encouragement to do chores; her ability to manage money decreases, and her social activity "decreases down to non existant [sic]." (*Id.* at 418–422.) When asked whether her impairments affect daily functions, Mr. Mayall stated that some functions "become limited based on severity of depression." (*Id.* at 422.) Mr. Mayall also wrote that when his daughter is not depressed, she can dress, wash, get her kids up and dressed, prepare meals daily, feed her kids and her dog, drive, shop and follow written instructions. (*Id.* at 418–22.) He noted that she can handle some changes in routine, but even when she is not depressed, she has a short attention span. (*Id.* at 422–23.)

The ALJ assigned "little weight" to Mr. Mayall's report in assessing the intensity, persistence and limiting effects of the symptoms of his daughter's impairments. (*Id.* at 229.) In light of the other record evidence, the ALJ found that Mr. Mayall's statements "do not evidence greater limitations that [sic] those already

indicated," and "do not establish that [Mayall's] impairments are disabling. (*Id.* at 229.)

The ALJ's decision to give little weight to Russell Mayall's third-party function report is supported by substantial evidence. The ALJ was required to consider all relevant evidence before making its decision, including nonmedical evidence. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). The ALJ complied with this requirement by directly addressing and considering Mr. Mayall's statements in the function report. The ALJ ultimately concluded that the statements did not support a finding of greater limitations than those established by other medical evidence, such as Dr. Woloshin's monthly mental status examinations, Mayall's testimony that she drives every day and takes medication that is somewhat helpful, and Dr. Hoffman's analysis. (R. at 229.) The ALJ's conclusion that Mayall has an RFC limited to simple, routine tasks no more than reasoning level 2, involving occasional contact with others, with little change in the work setting, is consistent with Russell Mayall's non-medical opinion.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

11